FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 09, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NORMAN S.,<br><br>                              Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | NO:  2:18-CV-140-FVS<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 15 and 16.  This matter was submitted for consideration without oral argument.  The plaintiff is represented by Attorney Chad L. Hatfield.  The defendant is represented by Special Assistant United States Attorney Justin L. Martin.  The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 16, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 15.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

Plaintiff Norman S.[1] protectively filed for disability insurance benefits on January 24, 2014.  Tr. 140-41.  Plaintiff alleged an onset date of January 1, 2014.  *See* Tr. 379.  Benefits were denied initially, Tr. 88-90, and upon reconsideration, Tr. 92-93.  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on July 7, 2017.  Tr. 33-67.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 12-32, and the Appeals Council denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 54 years old at the time of the hearing.  *See* Tr. 140.  He completed four or more years of college.  Tr. 384.  During the relevant time period he lived with his wife.  Plaintiff has work history as a tow truck owner/operator.

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

Tr. 39, 489.  He testified that he could not work during the relevant adjudicatory period because of diabetes, anxiety, and fatigue.  Tr. 45-46.

Plaintiff testified that he has anxiety attacks that cause him to "shut down" and isolate himself for up to a day at a time; he is tired "all the time" because he only gets two to three hours of sleep a night; he is overly emotional; and he gets "massive" headaches when he is in public.  Tr. 45-47, 51-53.  He reported that over the past few years, he has started to have problems being around groups of people, and could only spend 10 minutes in Wal-Mart before he had to leave.  Tr. 48-50.  Plaintiff testified that he could not work in an office full-time, because "it's claustrophobic."  Tr. 55.  He reported that he has a service dog who provides anxiety comfort, and helps him when he has blood sugar issues or trouble walking.  Tr. 55-56.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful since January 1, 2014, the alleged onset date.  Tr. 17.  At step two, the ALJ found Plaintiff has the following severe impairments: post-traumatic stress disorder (PTSD); anxiety; depression.  Tr. 18.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 19.  The ALJ then found that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can have occasional contact with the general public and occasional brief contact with supervisors. He can perform routine and predictable work with ordinary production requirements.

Tr. 20-21.  At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a tow truck owner/operator.  Tr. 26.  In the alternative, at step

five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff also can perform, including: mail clerk, collator operator, and printed circuit board assembler. Tr. 26-27. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of the decision. Tr. 27.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred at step two;

2. Whether the ALJ erred at step three;

3. Whether the ALJ properly weighed the medical opinion evidence;

4. Whether the ALJ properly considered the lay witness evidence;

5. Whether the ALJ properly considered Plaintiff's symptom claims; and

6. Whether the ALJ erred at steps four and five.

## DISCUSSION

### A. Step Two

To be considered 'severe' at step two of the sequential analysis, an impairment must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *also Smolen v. Chater,* 80 F.3d

1273, 1290 (9th Cir.1996). An impairment that is 'not severe' must be a slight

abnormality (or a combination of slight abnormalities) that has no more than a

minimal effect on the ability to do basic work activities. SSR 96-3p, 1996 WL

374181 at *1 (July 2, 1996). Plaintiff bears the burden to establish the existence of

a severe impairment or combination of impairments, which prevent him from

performing substantial gainful activity, and that the impairment or combination of

impairments lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505,

404.1512(a); *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2011).

However, step two is "a de minimus screening device [used] to dispose of

groundless claims." *Smolen*, 80 F.3d at 1290. "Thus, applying our normal

standard of review to the requirements of step two, we must determine whether the

ALJ had substantial evidence to find that the medical evidence clearly established

that [Plaintiff] did not have a medically severe impairment or combination of

impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ resolved step two in Plaintiff's favor, finding Plaintiff has the

following severe impairments: post-traumatic stress disorder (PTSD), anxiety, and

depression. Tr. 18. Despite this finding, Plaintiff generally argues that the ALJ

failed to account for additional severe impairments that "significantly limit his

ability to perform basic work-related activities," including: bipolar II disorder;

diabetes mellitus, type 2, "resulting in occasional low and high blood sugars,

moderate non-proliferative diabetic retinopathy, renal complications, fatigue,

shakiness, and burning of extremities"; hypertension and hyperlipidemia;

polycythemia, with fatigue, mood swings, and headaches; degenerative changes of

the spine, with neck and back pain; history of concussions; restless leg syndrome;

acid reflux; and sleep apnea. ECF No. 15 at 12 (citing Tr. 495, 504, 516-18, 520-

21, 558-61, 563, 590, 653, 696-97, 706, 711, 718, 856). The argument is

unavailing for several reasons.

First, Plaintiff fails to address the ALJ's specific findings at step two that (1)

Plaintiff's alleged physical conditions of diabetes, hypertension, sleep apnea,

restless leg syndrome, enlarged prostate, testicle cyst, asthma, and rheumatoid

arthritis are non-severe impairments because, while they "may appear in the

record[, they] have not had more than minimal limitations in [Plaintiff's] ability to

perform basic work activities for 12 continuous months"; and (2) his claimed

enlarged prostate, asthma, and rheumatoid arthritis, are not medically determinable

impairments because "there is no medical evidence from an acceptable medical

source establishing these conditions." Tr. 18-19; *see Carmickle v. Comm'r of Soc.*

*Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address

issue not raised with specificity in Plaintiff's briefing). In support of this finding,

the ALJ accorded great weight to medical expert Dr. Lynne Jahnke's testimony

that these conditions were not severe, which was consistent with the overall

medical evidence showing "essentially routine care for the physical conditions";

and the ALJ noted the "non-severity of physical impairments is further supported

by evidence in the record that [Plaintiff] has continued to work as a tow truck driver with no apparent significant physical problems with such work." Tr. 18-19 (citing, *e.g.*, Tr. 43-45, 698, 740).

Moreover, even assuming, *arguendo*, that the ALJ erred in finding the impairments identified by Plaintiff were non-severe, any error is harmless because Plaintiff fails to identify how these alleged impairments result in limitations beyond those included in the assessed RFC. *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was harmless where ALJ considered limitations caused by the condition at step four); *see also Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination). As discussed below, the ALJ properly weighed the opinion evidence and Plaintiff's symptom claims; and as a result, the RFC incorporated the limitations supported by substantial evidence in the record. The Court finds no error at step two.

## B. Step Three

Plaintiff faults the ALJ for finding at step three that Plaintiff's mental impairments did not meet or medically equal the severity of a listed impairment. ECF No. 15 at 12-13. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from

doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to her claim. 20 C.F.R. § 404.1525(d). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant bears the burden of establishing he meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

In determining whether a claimant's mental impairments meet a listing, the ALJ considers (1) whether specified diagnostic criteria ("paragraph A" criteria) are met, and (2) whether specified functional limitations ("paragraph B" criteria) are present. 20 C.F.R. § 404.1520a. To meet Listings 12.04, 12.06, and 12.15, a claimant must satisfy paragraph B criteria, which includes at least one extreme or two marked limitations in these four areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. 20 C.F.R. § 404, Subpart P, Appendix I. "Marked" means more than moderate but less than extreme. *Id.*

Here, the ALJ concluded that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04, 12.06, and 12.15. Tr. 19. Plaintiff generally contends, without citation to legal authority or specific reference to the longitudinal record, that the ALJ "failed to make adequate factual

findings or account for [Plaintiff's] longitudinal decline in determining that he does not meet or equal Listings 12.04, 12.06, and 12.15." ECF No. 15 at 12-13. This argument is inapposite. First, while not identified or challenged by Plaintiff, the ALJ specifically found the "paragraph B" criteria were not satisfied because Plaintiff had only mild to moderate limitations in all four "paragraph B" areas of mental functioning. Tr. 19-20. In support of this finding, the ALJ relied on evidence that Plaintiff "generally presented with intact memory, judgment, and cognitive functioning on examination"; his intellectual functioning, comprehension, and fund of knowledge were assessed as average; he was alert and oriented, cooperative, with good eye contact, and intact attention and concentration during treatment examinations; he reported getting along "OK" with authority figures; he did not appear uncomfortable talking to a CDIU investigator; he tested in the average range on Trails A and B, was able to spell "world" forward and backward, and recalled six digits forward and four digits backward; he performed all personal care tasks and presented as well-groomed; and reported he did his own cooking and cleaning. Tr. 19-20 (citing Tr. 401, 405, 420,582, 591, 595, 604, 731-32, 744-45, 866, 888).

Second, as noted by Defendant, "Plaintiff's argument misses the mark because he fails to explain how the record evidence demonstrates that his impairments satisfy the relevant listings." ECF No. 16 at 8. In his reply brief, Plaintiff generally argues that "the medical opinion evidence, mental health

treatment notes, and lay witness testimony indicate [Plaintiff] suffers from disabling mental health impairments and frequent periods of decompensation." ECF No. 17 at 7. However, Plaintiff fails to cite medical evidence from the relevant adjudicatory period, including opinion evidence, to support his argument that the ALJ erred in her step three finding. Moreover, as discussed in detail below, the ALJ properly considered the medical opinion evidence, and granted little weight to the lay testimony. Tr. 24-25. Accordingly, Plaintiff's reliance on this evidence does not establish that the ALJ erred in failing to credit that evidence when assessing whether Plaintiff's impairments meet or medically equal Listings 12.04, 12.06, and 12.15.

Based on the foregoing, the Court finds the ALJ properly concluded, based on substantial evidence, that Plaintiff's claimed mental impairments did not meet or medically equal Listing 12.04, 12.06, 12.15.

## C. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is generally given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d).[2] The ALJ need only provide "germane reasons" for

---

[2] Social Security regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. However, the Court applies the law in effect at the time of the ALJ's decision on March 1, 2017.

disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinions of treating mental health provider Jennifer Blanchard, ARNP, and examining psychologist Amy Ford, Ph.D. ECF No. 15 at 8-11.

### 1. Jennifer Blanchard, ARNP

In June 2016, treating provider Jennifer Blanchard, ARNP, completed a check-box "mental residual functional capacity assessment" form. Tr. 692-95. Ms. Blanchard opined that Plaintiff would have moderate limitations in four categories of "basic work activities;" and marked limitations in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Tr. 692-93. She also assessed severe limitations in Plaintiff's ability to work in coordination with or proximity to others without being distracted by them; complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the

work setting.  Tr. 692-93.  The ALJ assigned Ms. Blanchard's opinion little weight for several reasons.  Tr. 24-25.

First, the ALJ noted that Ms. Blanchard's assessments are "not consistent with [Plaintiff's] work and other activities."  Tr. 25.  An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning.  *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  In support of this finding, most notably, the ALJ's decision cites evidence from a Cooperative Disability Investigations Unit (CDIU) investigative report in December 2014 that found Plaintiff "continued to perform a significant amount of work for his towing business," including: observations of Plaintiff actively working alongside other individuals and driving; Plaintiff's reports that he did most of the tow/impound calls and was available 24 hours, seven days a week; and his reports that he was active in the community, was president of the Chamber of Commerce, and was on the planning committee for the City of Entiat.  Tr. 22-23, 415-18.  The CDIU report also include reports from witnesses that Plaintiff did most of the towing, worked on vehicles in the repair shop, did some paperwork, and was a "micromanager"; and observations by the investigator that Plaintiff did not appear anxious or uncomfortable when talking and interacting.  Tr. 23, 410, 418-20.  In January 2015, Plaintiff again reported that he was working for a towing business and was on call 24 hours a day, 7 days a week; he did "most" of the cooking and

cleaning in his home; and he and his wife raised show dogs and they had 19 dogs living in their home with them at that time. Tr. 23, 740-41.

Plaintiff argues the ALJ "impermissibly overstated [Plaintiff's] functioning" because the CDIU report was "completed by investigators purporting to be State Patrol officers – [which] was particularly problematic, as [Plaintiff's] towing company completely relied on obtaining work from law enforcement agencies such as the State Patrol; thus, he was coerced to downplay his work limitations or his business would be at the risk of losing an indispensable client and place his family's well-being in jeopardy." ECF No. 15 at 9-10. However, the only evidence supporting Plaintiff's contention that the CDIU investigator posed as a State Patrol officer is his own subjective testimony, which, as discussed below, was properly discounted by the ALJ. Tr. 41-42. Moreover, the Court's review of the CDIU report confirms that the investigator personally observed that Plaintiff "did not display physical or mental difficulties," and interviewed third party witnesses who reported Plaintiff did most of the towing, worked on vehicles, and was a "micro manager." *See* Tr. 410, 415-16, 418-20. Finally, while not challenged by Plaintiff, the ALJ also relied on Plaintiff's self-reported activities during the adjudicatory period, including: cooking, cleaning, doing all personal care, and taking care of 19 show dogs with his wife. Tr. 393, 401, 740-41. Based on the foregoing, it was reasonable for the ALJ to find the severity of the limitations assessed by Ms. Blanchard was inconsistent with Plaintiff's reported

functioning. This was a germane reason for the ALJ to reject Ms. Blanchard's opinion.

Next, the ALJ noted that Ms. Blanchard's opinion is "not accompanied by any narrative explanation or objective findings of abnormality" and the "assessments in [the] form are not consistent with her own objective findings as contained in treatment notes." Tr. 25. As an initial matter, the Court notes that it is permissible for the ALJ to reject check-box reports that do not contain any explanation of the bases for their conclusions. *See Crane v. Shalala*, 79 F.3d 251, 253 (9th Cir. 1996); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). However, the Ninth Circuit has held that when a treating provider's check-box opinion was "based on significant experience with [Plaintiff] and supported by numerous records, [it was] therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014); *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form").

Here, the ALJ specifically found that Ms. Blanchard's opinion was not consistent with her own "objective findings as contained in treatment notes." Tr. 25; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may

properly reject a medical opinion if it is inconsistent with the provider's own treatment notes). For instance, the ALJ cites Ms. Blanchard's May 2016 examination findings that Plaintiff was well groomed, his psychomotor activity was within normal, his affect was full in range, his eye contact was good, his speech was normal, his mood was stable, his thought process was logical, and his thought content was appropriate. Tr. 25 (citing Tr. 871). Plaintiff argues "Ms. Blanchard's treatment notes and findings fully support her opinion," and cites (1) her July 2016 treatment note wherein Plaintiff presented with anxiety, distressed mood, tearfulness, and disrupted sleep; (2) Plaintiff's reports to Ms. Blanchard in May 2016 that he had a "rough month" and had anxiety when responding to an accident; and (3) Plaintiff's reports to Ms. Blanchard in January 2016 that he has periods of depression with low energy and motivation, chronic sleep disturbance, and anxiety. ECF No. 15 at 10 (citing Tr. 871, 873, 881); ECF No. 17 at 3 (citing Tr. 867). However, this evidence is largely comprised of Plaintiff's own subjective complaints, which were properly discounted by the ALJ; whereas the results of the objective mental status examinations conducted by Ms. Blanchard, as cited by the ALJ, were almost entirely normal. *See* Tr. 866, 871, 873 (noting improvement and good progress toward Plaintiff's goal), 881. Thus, regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find the severity of Ms. Blanchard's assessed limitations was unsupported by her

own objective findings. This was a germane reason for the ALJ to reject her opinion.

For all of these reasons, the Court finds the ALJ properly considered Ms. Blanchard's opinion, and offered germane reasons for granting it little weight.

### 2. Amy Ford, Ph.D.

In November 2016, examining psychologist, Dr. Amy Ford, completed a psychological evaluation of Plaintiff. Tr. 886-92. Dr. Ford found no limitations in Plaintiff's ability to understand, remember and carry out instructions; moderate limitations in Plaintiff's ability to interact appropriately with the public and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting; and a marked limitation in Plaintiff's ability to interact appropriately with supervisors. Tr. 890-91. The ALJ generally gave "great weight" to Dr. Ford's opinion, but "[o]nly partial weight [was] accorded to Dr. Ford's assessment of marked limitation in interacting appropriately with supervisors and moderate limitation in interacting appropriately with coworkers." Tr. 24.

Specifically, the ALJ granted these portions of Dr. Ford's opinion only partial weight because (1) "there is no explanation by Dr. Ford of why she indicated marked limitations in interacting appropriately with supervisors"; (2) Dr. Ford "stated in her narrative statement that [Plaintiff's] ability to interact socially was 'good,' which is not internally consistent with marked limitations"; and (3)

Plaintiff reported that he gets along "OK" with authority figures, and he was observed by the CDIU investigator interacting with other towing company employees "with no apparent distress." Tr. 24 (citing Tr. 405, 416, 889). An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings. *See Batson*, 359 F.3d at 1195; *see also Crane*, 79 F.3d at 253 (it is permissible for an ALJ to reject reports that do not contain any explanation of the bases for their conclusions). Moreover, an ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes. *See Tommasetti*, 533 F.3d at 1041.

Plaintiff argues the ALJ "improperly cherry-pick[ed] evidence from roughly two years prior to Dr. Ford's examination to justify her rejection"; and further contends that Dr. Ford's limitations were "supported by her examination" of Plaintiff, including his self-report of depressed and anxious mood, sadness, dissatisfaction, insomnia, social withdrawal, agitation, and nightmares. ECF No. 15 at 11. However, the Court notes the objective mental status examination conducted by Dr. Ford included findings that Plaintiff was cooperative and polite, had direct eye contact and "good, humorous" attitude, was polite and responsive, a good historian, expressed himself well, smiled "easily and fully," and spoke at a normal pace with good energy. Tr. 888. Moreover, as noted by the ALJ, Dr. Ford found Plaintiff's ability to interact socially "was good." Tr. 889. Finally, regardless of evidence in the overall record that might be considered more

favorable to Plaintiff, it was reasonable for the ALJ to find the severity of Dr. Ford's assessed limitations was inconsistent with evidence from the CDIU investigation, and Plaintiff's own statements, indicating that Plaintiff interacted appropriately with supervisors and coworkers. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

For all of these reasons, the Court finds no error in the ALJ's rejection of Dr. Ford's assessed limitations on Plaintiff's ability to interact appropriately with supervisors and co-workers.

**D. Lay Witness Evidence**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his] condition."). To discount evidence from lay witnesses, an ALJ must give reasons "germane" to each witness. *Dodrill*, 12 F.3d at 919.

*1. Doug Donaldson and Randall McRoberts*

In July 2016, Randall McRoberts, an employee of the company owned by Plaintiff, submitted a "disability observation letter" that reported Plaintiff did not work any full days, had anxiety and depression "about everyday," was constantly

tired, "has been more secluded," has gotten worse, is forgetful, and has a hard time focusing on things. Tr. 465. Doug Donaldson, also an employee of Plaintiff's towing company, similarly reported in July 2016 that Plaintiff has "progressively got worse in dealing with people as they put him into anxiety," shuts down and has to sit alone or leave for the day, has difficulty managing his diabetes, does not sleep well, has difficulty driving, "especially at night," and his PTSD has worsened. Tr. 466. The ALJ gave these opinions "only some weight" for several reasons. Tr. 25.

First, the ALJ noted that "other evidence in the record . . . indicates [Plaintiff] has worked more than alleged and been more functional than these witnesses describe." Tr. 25. Inconsistency between a claimant's activities and a lay witness's testimony is a germane reason to discount the lay testimony. *See Carmickle*, 533 F.3d at 1164. In support of this finding, the ALJ referenced evidence in the record, discussed in detail herein, including: (1) Plaintiff's own reports that he was on call 24 hours a day, 7 days a week, for his towing company, did all the cooking and cleaning at home, and took care of up to 19 show dogs; and (2) surveillance by the CDIU investigator that Plaintiff was driving and working with others; and witness reports that he did most of the towing, worked on vehicles, and did paperwork. *See* Tr. 393, 401, 410-20, 740-41.

Plaintiff again argues the CDIU report was "problematic" because the CDIU investigator posed as State Patrol, a major client of Plaintiff's company; thus, "full

disclosure regarding his declining hours and functioning could have resulted in a failure of his business." ECF No. 15 at 15. In addition, Plaintiff argues, without citation to the record, that the ALJ "failed to account for [Plaintiff's] longitudinal decline in functioning." ECF No. 15 at 15. However, there is no evidence, aside from Plaintiff's own properly discounted subjective statements, that he felt pressure not to disclose his limitations to the CDIU investigator; and as discussed herein, the CDIU report included the investigator's own surveillance and the reports of witnesses as to Plaintiff's ability to work. *See* Tr. 410-20. Thus, regardless of evidence that could be considered favorable to Plaintiff, it was reasonable for the ALJ to reject Mr. Donaldson and Mr. McRoberts' lay statements as inconsistent with Plaintiff's reports, and the observations of the CDIU investigator, indicating Plaintiff was more functional than the witnesses describe. This was a germane reason for the ALJ to give their statements only some weight.

Second, the ALJ found "the employees statements are totally inherently unreliable because of the obvious consequences for their failure to totally concur with the statements of their boss." Tr. 25. Plaintiff argues this finding was "arbitrary speculation." ECF No. 15 at 15. The Court agrees. There is no evidence in the record that the lay witness statements by Mr. Donaldson or Mr. McRoberts was unduly influenced by Plaintiff. Moreover, the Ninth Circuit has held that it is error to discount lay witness testimony because of a relationship to the Plaintiff. *See Smolen*, 80 F.3d at 1289 ("testimony from lay witnesses who see

the claimant every day is of particular value").  However, this error is harmless because, as discussed above, the ALJ gave an additional germane reason, supported by substantial evidence, for rejecting Mr. Donaldson and Mr. McRoberts' lay witness statements.  *See Carmickle*, 533 F.3d at 1162-63. Moreover, even assuming, *arguendo*, that the ALJ failed to properly weigh these lay statements, any error is harmless because the witness' testimony was substantially the same as the claimant's, and the ALJ provided legally sufficient reasons for finding the claimant less than fully credible.  *See Molina*, 674 F.3d at 1121-22; *Compare* Tr. 46-55 *with* Tr. 465-66.

For all of these reasons, the ALJ did not err in considering Mr. Donaldson and Mr. McRoberts' lay witness statements.

### 2. Marie Stenberg

In April 2014, Plaintiff's wife, Marie Stenberg, completed a third-party function report.  Tr. 392-99.  She reported that Plaintiff was unable to work due to chronic depression, unstable diabetes, high anxiety, and a shoulder injury.  Tr. 392. Ms. Stenberg also reported that Plaintiff was unable to cook meals, did no house or yard work, did not drive, did not shop, did not handle finances, did not spend time with others, could lift "maybe 10 pounds," could not walk more than a few steps, could pay attention for "maybe" five minutes, did not get along with authority figures, did not handle stress or changes in routine, and had fear of strangers.  Tr. 394-98.  The ALJ gave little weight to Ms. Stenberg's report "because the

limitations reported therein are not consistent with other evidence in the record." Tr. 25.

Inconsistency between a claimant's activities and a lay witness's testimony is a germane reason to discount the lay testimony. *See Carmickle*, 533 F.3d at 1164. Plaintiff generally argues that the ALJ "erred because she failed to provide specific, germane reason for the rejection, as a cite to general inconsistency with the medical evidence is insufficient." ECF No. 15 at 16. However, while not acknowledged by Plaintiff, the ALJ cited specific examples of inconsistencies between Ms. Stenberg's report and the "other evidence" of record. Tr. 25. For example, Ms. Stenberg reported that Plaintiff could only walk a few steps before he had to stop and rest, but the record indicates that Plaintiff took his dog for walks, and Plaintiff "was observed by various treating medical providers or other sources to have a normal gait." Tr. 25 (citing Tr. 410, 587, 589, 738, 866, 871). As noted by the ALJ, Ms. Stenberg additionally reported that Plaintiff was unable to do chores or cook, but in January 2015 Plaintiff reported he did most of the cooking and cleaning; and Plaintiff and his wife "also raised dogs, and reportedly had 19 dogs living with them in 2015, which suggests (especially where [Plaintiff's] wife was receiving disability benefits) that he was doing a fair amount of work caring for them." Tr. 25, 591. The inconsistency between Ms. Stenberg's testimony, and Plaintiff's activities, was a germane reason to reject her lay testimony.

### E. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 21.

First, the ALJ found the "record as a whole" indicates he was able to perform at the assessed RFC, and "medical records, including treatment notes from mental health providers, indicate that [Plaintiff] improved with treatment, including medication management and counseling." Tr. 22. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Moreover, the effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of

determining eligibility for benefits) (internal citations omitted); *see also*

*Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a

claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ set out, in detail, the medical evidence contradicting

Plaintiff's claims of disabling limitations, including improvement with treatment.

Tr. 22-23. For example, during physical exams Plaintiff was consistently observed

as alert and conversant, with appropriate affect, normal appearance, normal

psychomotor activity, good eye contact, cooperative, normal thought process,

normal attention/concentration, and normal memory. Tr. 19-20, 22-24, 420, 560,

582, 589, 595, 603-04, 731-32, 744, 839, 866, 888). As noted by the ALJ, in May

2014, after being put on medication, Plaintiff reported his depression was a bit

better; in August 2014, Plaintiff reported he was having no depressive symptoms

and his treating provider noted he was "doing well on SSRI therapy"; and in

September 2104, Plaintiff was noted to be doing well on Zoloft. Tr. 22 (citing Tr.

565, 577, 722). Further, the ALJ found "treatment records have shown some

waxing and waning of mental symptoms, but have continued to show that

treatment was effective and [Plaintiff] continued to work." Tr. 23 (citing Tr. 847

("gradually doing better with moods" in June 2015), 849 (Plaintiff was on call at

towing company, and improving on medication, in October 2015), 853 ( "greatly

improved" on medication in December 2015), 855 ( "progress towards goals is

excellent"), 871 ( "doing a little better" and trying to cut back on work schedule in May 2016).

Plaintiff generally argues, without specific citation to the record, that the ALJ erred by "improperly ignoring and mischaracterizing substantial evidence of disability." ECF No. 15 at 18. However, regardless of evidence that could be interpreted more favorably to the Plaintiff, it was reasonable for the ALJ to discount Plaintiff symptom claims as inconsistent with the overall medical record, including evidence of improvement with treatment. *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation). This lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

Second, the ALJ noted that "it appears [Plaintiff] has been far more active and functional than alleged." Tr. 22. Plaintiff correctly notes that a claimant need not be utterly incapacitated in order to be eligible for benefits. ECF No. 15 at 19 (citing *Fair*, 885 F.2d at 603); *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113; *see also Bray,* 554 F.3d at

1227 (the ability to work can be considered in assessing Plaintiff's symptom claims).

In support of this finding, the ALJ noted that "[e]vidence in the record indicates [Plaintiff] has continued to perform a significant amount of work for his towing business, contrary to his reports and testimony of dramatically reducing such work as of the alleged onset date." Tr. 22. Most notably, the CDIU investigator observed Plaintiff "actively working alongside other individuals and driving"; Plaintiff reported he did most of the tow/impound calls and was available 24 hours a day, seven days a week; Plaintiff reported he was active in the community, including acting as president of the Chamber of Commerce; and witnesses reported that he did most of the towing, worked on vehicles in the repair shop, did paperwork, and was a "micromanager." Tr. 23, 410-20. And in January 2015, as noted by the ALJ, Plaintiff reported he was on call with a towing business 24 hours a day, 7 days a week; did most of the cooking and cleaning; and raised show dogs, including keeping 19 dogs in their home with them at that time. Tr. 23 (citing Tr. 740-42). Finally, in October 2015, Plaintiff reported that he was working, though trying to cut back on his work schedule. Tr. 23, 871.

Plaintiff argues that the ALJ failed to consider Plaintiff's testimony that he was limited at work and reduced his hours due to his mental health symptoms; and the ALJ "overlooked evidence of declining functioning," including an emergency room visit in April 2016 for weakness, near syncope, and hallucinations. ECF No.

15 at 19 (citing Tr. 45-50, 54-55, 820-29).  Plaintiff additionally contends that the ALJ "failed to identify how such activities were inconsistent with the disabling limitations."  ECF No. 15 at 20.  However, regardless of whether the evidence could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's reported activities across the relevant adjudicatory period, including performing a significant amount of work for his towing business, was "inconsistent with the degree of limitation alleged by [Plaintiff]."  Tr. 22-23; *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *Burch*, 400 F.3d at 679 ("where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").  This was a clear and convincing reason to discredit Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**F. Step Four and Five**

Finally, Plaintiff contends that the ALJ "erred by failing to find any severe physical impairments, [and] improperly disregarding exertional, manipulative, postural, and environmental limitations supported by substantial evidence"; and therefore "failed to conduct an adequate analysis at steps four and five."  ECF No. 15 at 20-21.  However, as discussed in detail above, the ALJ's findings at step two

and three, consideration of the medical opinion evidence, rejection of Plaintiff's symptom claims, and rejection of the lay witness testimony, was supported by the record and free of legal error. The hypothetical posed to the vocational expert in interrogatories[3] contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record. *Bray,* 554 F.3d at 1228 ("[i]f an ALJ's hypothetical does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."). Thus, the ALJ did not err at steps four and five.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly evaluated

---

[3] Plaintiff also argues the ALJ erred in failing to call a vocational expert. ECF No. 15 at 20. This argument is misplaced. As noted by Defendant, the ALJ requested and received interrogatories from a vocational expert, and Plaintiff "does not cite any authority for the proposition that requesting interrogatories from a vocational expert does not constitute seeking assistance from a vocational expert, as required." ECF No. 16 at 20.

Plaintiff's impairments at step two; properly found Plaintiff's mental impairment did not meet or medically equal Listing 12.04, 12.06, and 12.15; properly weighed the medical opinion evidence; properly considered the lay witness statements; provided clear and convincing reasons to discount Plaintiff's symptom testimony; and did not err at steps four and five. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** August 9, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge